UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

JOHN F. THOMAS and BARBARA J.   §
THOMAS,   §
  §
   Plaintiffs,   §
  §
v.   §   CIVIL ACTION NO. 3:15-CV-1937-B
  §
STATE FARM LLOYDS and MAEGAN   §
STRONGER,   §
  §
   Defendants.   §

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendants State Farm Lloyds (SFL) and Maegan Stronger's Motion for

Summary Judgment (Doc. 33). This is an insurance coverage dispute over whether a Water Damage

endorsement (WDE) in Plaintiffs John F. Thomas and Barbara J. Thomas's homeowner's policy with

SFL extends to foundation damage caused by a leak in the home's plumbing system. Plaintiffs argue

that the WDE extends their coverage to include foundation damage caused by leaky pipes or, at the

very least, renders the policy ambiguous to the point that it must be construed in their favor. For

their part, Defendants dispute both that the policy's terms are ambiguous and that the WDE covers

the foundation damage. For the reasons set forth below, the Court agrees with Defendants, and finds

that the policy is unambiguous and that "the WDE excludes coverage for loss which consists of, or

is caused by, foundation movement, even when the movement is related to plumbing leaks." *Salazar*

*v. State Farm Lloyds*, No. H-13-1904, 2014 L 2862760, at *1 (S.D. Tex. June 24, 2014).

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety.

I.

BACKGROUND

Plaintiffs own a home in Dallas, Texas. Doc. 1-3, Ex. C, Pls.' Orig. Pet. ¶ 10. They insured it with a Texas Dwelling Insurance Policy issued by SFL. *Id.* ¶ 9–10. In late 2011, Plaintiffs began to notice cracks in some of the home's walls. Doc. 40, Pls.' App. 44, Ex. B, Dep. of Barbara Thomas 28:7–20. They noticed more cracks and sloping floors in September 2013 and, as a result, hired an engineering firm to determine the damage's source. *Id.* at 12–13, Ex. A, Dep. of John Thomas 45:15–20, 50:4–51:1; 45, Ex. B, Dep. of Barbara Thomas 29:6–30:7.

The engineer, Edward Scoular, concluded that foundation movement was to blame. *Id.* at 13–14, Ex. A, Dep. of John Thomas 51:2–56:23; Doc. 35, Defs.' App. 79–81, Ex. E, Visual Foundation Eval. Add. #2. And that foundation movement was due to soil erosion, which Scoular and Plaintiffs' plumber later determined was caused by five leaks in the home's plumbing system.[1] Doc. 40, Pls.' App. 20, Ex. A, Dep. of John Thomas 79:17–80:13. Despite those leaks, however, Plaintiffs admit there was no noticeable water damage—stains, seepage, or the like—beyond that caused by the foundation's shifting. *Id.* at 20–21, Ex. A, Dep. of John Thomas 79:12–16, 81:13–23, 83:17–84:8.

At any rate, the damage was enough to warrant repairs to the plumbing system and foundation, as well as to other areas of the property that were necessarily damaged by the repairs

---

[1]The Court notes that Plaintiffs sought to supplement their summary judgment evidence with deposition transcripts from both Scoular and the plumber. *See* Docs. 49, Plaintiffs' Opposed Motion for Leave to File Supplemental Brief and Appendix; 51, Plaintiffs' Opposed Motion for Leave to File Second Supplemental Brief and Appendix. The Court denied their requests. Doc. 82, Order. To be clear, though, that additional evidence would not have changed the end result because, as explained below, this is ultimately a matter of contract interpretation.

themselves. *Id.* at 19–27, Ex. A, Dep. of John Thomas 76:25–79:11, 86:5–93:14, 98:15–105:14. The

cost for those repairs totaled approximately $55,534. *Id.* at 24–25, Ex. A, Dep. of John Thomas

95:14–97:13. Plaintiffs paid for the repairs out of pocket and then submitted a claim for the damages

to SFL. *Id.* at 25, Ex. A, Dep. of John Thomas 97:14–97:22; 50–53, Ex. C, Claim History File.

     Defendant Maegan Stronger, an adjuster at SFL, called John Thomas to discuss the claim.

*Id.* at 50–53, Ex. C. Claim History File. Thomas described the cracks and foundation damage caused

by the plumbing leaks and their subsequent repair. *Id.* Stronger told Thomas that SFL would deny

Plaintiffs' claim because the damage to their home was not the type of visible water damage that the

Policy covered. *Id.*

     SFL denied Plaintiffs' claim and Stronger sent Plaintiffs a letter reiterating her earlier

conclusion. *Id.* at 61–63, Ex. C, Claim History File. The Policy, she explained, did not cover

foundation settling or cracking or earth movement, so Plaintiffs' losses were not insured. *Id.* But

Stronger's letter did not mention that the Policy had a WDE. Doc. 35, Defs.' App. 9–10, Ex. A,

Policy No. 43-QQ-0431-8; *see id.* And Plaintiffs believed that, because the foundation settling and

cracking were caused by plumbing leaks (*i.e.*, water damage), they should have been covered by the

WDE. Doc. 40, Pls.' App. 30, Ex. A, Dep. of John Thomas 119:8–120:3.

     On that basis, Plaintiffs filed suit in Texas state court asserting claims against SFL for fraud,

conspiracy to commit fraud, breach of contract, violations of chapters 541 and 542 of the Texas

Insurance Code, and breach of the duty of good faith and fair dealing. *See* Doc. 1-3, Ex. C, Pls.' Orig.

Pet. ¶¶ 42–62. As to Stronger, Plaintiffs alleged violations of chapter 541 of the Texas Insurance

Code, fraud, and conspiracy to commit fraud. *Id.* ¶¶ 33–45. Defendants removed the case to federal

court on diversity grounds.[2] Doc. 1, Notice of Removal. Then they moved for summary judgment on all of Plaintiffs' claims. Doc. 33, Defs.' Mot. for Summ. J. Plaintiffs responded. Doc. 38, Pls.' Resp. Opp'n Defs.' Mot. for Summ. J. Defendants replied in turn. Doc. 42, Defs.' Reply Opp'n Pls.' Resp [hereinafter Defs.' Reply]. The Motion is therefore ready for review.

## II.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the non-moving party." *Burrell v. Dr. Pepper/Seven Up Bottling Grp.*, 482 F.3d 408, 411 (5th Cir. 2007). And a fact "is 'material' if its resolution could affect the outcome of the action." *Id.*

The summary judgment movant bears the burden of proving that no genuine issue of material fact exists. *Latimer v. Smithkline & French Labs.*, 919 F.2d 301, 303 (5th Cir. 1990). Usually, this requires the movant to identify "those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). But if the non-movant ultimately bears the burden of proof at trial, the movant may satisfy its burden just by pointing to the absence of evidence supporting the

---

[2]It should be noted that both Plaintiffs and Stronger are citizens of Texas. In their removal, Defendants claimed that Stronger was fraudulently joined to defeat diversity jurisdiction. Doc. 1, Notice of Removal ¶ 2. Plaintiffs disagreed and moved for remand. Doc. 7, Pls.' Mot. Remand. The Court found in Defendants' favor and concluded that Plaintiffs' claims against Stronger were theoretical, so remand would be inappropriate. Doc. 14, Mem. Op. & Order 13.

non-movant's case. *Id.* at 322–23.

If the movant meets that burden, then it falls to the non-movant to "show with significant probative evidence that there exists a genuine issue of material fact." *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000) (internal quotation marks omitted) (citing *Conkling v. Turner*, 18 F.3d 1285, 1295 (5th Cir. 1994)). And significant probative evidence is just that: significant. *See Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (per curiam). "[M]etaphysical doubt as to material facts," "conclusory allegations," "unsubstantiated assertions," or a mere "scintilla of evidence" will not do. *Id.* (internal citations and quotation marks omitted). Rather, "the non-movant must go beyond the pleadings and present specific facts indicating a genuine issue for trial." *Bluebonnet Hotel Ventures, L.L.C. v. Wells Fargo Bank, N.A.*, 754 F.3d 272, 276 (5th Cir. 2014) (citing *Celotex*, 477 U.S. at 324).

To be sure, the court views evidence in the light most favorable to the non-movant when determining whether a genuine issue exists. *Munoz v. Orr*, 200 F.3d 291, 302 (5th Cir. 2000). Yet it need not "sift through the record in search of evidence to support a party's opposition to summary judgment." *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16 & n.7 (5th Cir. 1992)). Simply put, the non-movant must "identify specific evidence in the record" and "articulate the precise manner in which that evidence supports [its] claim." *Id.* If it cannot, then the court must grant summary judgment. *Little*, 37 F.3d at 1076.

## III.

## ANALYSIS

There are, as mentioned above, a number of causes of action at play here. But as laid out

below, they boil down to whether SFL breach the terms of the Policy when it denied Plaintiffs' claim for foundation damage, which, in turn, requires the Court to determine whether the WDE covered damage to Plaintiffs' home's foundation caused by their leaky plumbing system.

   A.   *The Contractual Claim: Did the Policy Cover the Damages to Plaintiffs' Home?*

      1.   Insurance policy interpretation under Texas Law

"Insurance policies are contracts." *Harken Expl. Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 471 n.3 (5th Cir. 2001). And "[i]n diversity cases such as this one, [courts] apply state law rules of construction. Therefore, Texas's rules of contract interpretation control." *Id.* (internal citations omitted).

Under Texas law, insurance policies are subject to the same rules of interpretation and construction applicable to contracts generally. *Progressive Cty. Mut. Ins. Co. v. Sink*, 107 S.W.3d 547, 551 (Tex. 2003). That means the Court's "primary concern in construing a written contract 'is to ascertain the true intent of the parties as expressed in the instrument.'" *Fed. Ins. Co. v. Northfield Ins. Co.*, No. 14-20633, —F.3d—, 2016 WL 4978361, at *2 (5th Cir. Sept. 16, 2016) (quoting *Nat'l Union Fire Ins. Co. v. CBI Indus., Inc.*, 907 S.W.2d 517, 520 (Tex. 1995)).

To that end, the Court "evaluates the contract based on its plain meaning, determining what the words of the contract say the parties agreed to do." *Tetra Tech., Inc. v. Cont'l Ins. Co.*, 814 F.3d 733, 746 (5th Cir. 2016) (internal quotation marks and citations omitted). The Court "'must examine the policy as a whole, seeking to harmonize all provisions and render none meaningless.'" *Id.* (quoting *In re Deepwater Horizon*, 470 S.W.3d 452, 464 (Tex. 2015)). Any "[a]mbiguous language—in particular, exclusionary language—must be construed 'strictly against the insurer and liberally in favor of the insured.'" *Id.* at 747 (quoting *Am. Int'l Specialty Lines Ins. Co. v. Rentech Steel*

*LLC*, 620 F.3d 558, 563–64 (5th Cir. 2010)).

But that rule comes into play only when the policy's language is ambiguous—and that is a question of law for the Court to determine. *Kelley-Coppedge, Inc. v. Highland Ins. Co.*, 980 S.W.2d 462, 464 (Tex. 1998). "If the policy language is worded so that it can be given a definite or certain legal meaning, it is not ambiguous and the court must construe the policy as a matter of law and enforce it as written." *Tetra Tech.*, 814 F.3d at 746–47 (internal quotation marks and citations omitted). Indeed, a policy "'is ambiguous only when the application of pertinent rules of interpretation to the face of the instrument leaves it genuinely uncertain which one of two or more meanings is the proper meaning.'" *Tesoro Ref. & Mktg. Co. v. Nat'l Union Fire Ins. Co. of Pitt., Pa.*, No. 15-50405, —F.3d—, 2016 WL 4166173, at *2 (5th Cir. July 29, 2016) (quoting *RSUI Indem. Co. v. Lynd Co.*, 466 S.W.3d 113, 119 (Tex. 2015)).

Simply put, a finding of ambiguity requires that the policy "'be susceptible to two or more *reasonable* interpretations.'" *Id.* (emphasis added) (quoting *Am. Mfrs. Mut. Ins. Co. v. Schaefer*, 124 S.W.3d 154, 157 (Tex. 2003)). So neither the bare presence of conflicting policy interpretations nor mere "disagreement about the meaning of" its terms is enough. *Id.* With that in mind, "the Texas Supreme Court has stressed its policy preference for 'uniformity when identical insurance provisions will necessarily be interpreted in various jurisdictions.' And even when uniformity is made impossible by jurisdictional splits, Texas courts 'strive for uniformity as much as possible.'" *Apache Corp. v. Great Am. Ins. Co.*, 2016 WL 6090901 at *3 (5th Cir. Oct. 18, 2016) (quoting *McGinnes Indus. Maint. Corp. v. Phoenix Ins. Co.*, 477 S.W.3d 786, 794 (Tex. 2016)).

2.      The terms of the Policy

The Policy[3] provides in pertinent part:

### SECTION I - LOSSES INSURED

### COVERAGE A - DWELLING

> We insure for accidental direct physical loss to the property described in Coverage A, except as provided in **SECTION I - LOSSES NOT INSURED.**

. . .

### SECTION I - LOSSES NOT INSURED

> 1. We do not insure for any loss to the property described in Coverage A which consists of, or is directly and immediately caused by, one or more of the perils listed in items a. through n. below, regardless of whether the loss occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

> > f. continuous or repeated seepage or leakage of water or steam from a:

> > > (1) heating, air conditioning or automatic fire protective sprinkler system;

> > > (2) household appliance; or

> > > (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors;

. . .

> > l. settling, cracking, shrinking, bulging, or expansion of pavements,

---

[3] The following terms are gathered from the Policy, *i.e.*, Plaintiffs' Dwelling Insurance Policy with SFL. Doc. 35 Defs.' App. 36–40, Ex. A, Policy No. 43-QQ-0431-8.

patios, foundation, walls, floors, roofs, or ceilings;

. . .

2. We do not insure under any coverage for any loss which would not have occurred in the absence of one or more of the following excluded events. We do not insure for such loss regardless of: (a) the cause of the excluded event; or (b) other causes for the loss; or (c) whether other causes acted concurrently or in any sequence with the excluded event to produce the loss; or (d) whether the event occurs suddenly or gradually, involves isolated or widespread damage, arises from natural or external forces, or occurs as a result of any combination of these:

. . .

b. **Earth Movement**, meaning the sinking, rising, shifting, expanding, or contracting of the earth, all whether combined with water or not. Earth movement includes but is not limited to earthquake, landslide, mudflow, mudslide, sinkhole, subsidence, erosion or movement resulting from improper compaction, site selection or any other external forces. . . .

The WDE,[4] in turn, amended the Policy as follows:

## SECTION I - ADDITIONAL COVERAGES

### Water Damage Coverage

1. We cover deterioration, wet rot or dry rot of property described in Coverage A and Coverage B caused by the continuous or repeated seepage or leakage of water or steam from a:

a. heating, air conditioning, or automatic fire protective sprinkler system;

b. household appliance; or

c. plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings or floors.

---

[4]*Id.* at 9–10, Ex. A, Policy No. 43-QQ-0431-8.

This cost includes the cost of tearing out and replacing only that particular part of the building necessary to gain access to the specific point of that system or appliance from which seepage or leakage occurred.

2. We do not cover:

      a. loss to the system or appliance from which the water or steam escaped;

. . .

## SECTION I - LOSSES NOT INSURED

The following revisions are made for the purposes of this endorsement only.

Item 1.f is replaced with the following:

      f. except as specifically provided by this endorsement, continuous or repeated seepage or leakage of water or steam from a:

            (1) heating, air conditioning or automatic fire protective sprinkler system;

            (2) household appliances; or

            (3) plumbing system, including from, within, or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors;

      which occurs over a period of time;

. . .

Item 1.l is replaced with the following:

      l. settling, cracking, shrinking, bulging, or expansion of pavements, patios, or foundations;

Except as stated in this endorsement we do not provide coverage for any loss described in **SECTION I - LOSSES NOT INSURED**.

All other policy provisions apply.

- 10 -

> ### 3.   The Policy's terms are unambigous: The WDE does not cover foundation damage, even when that damage is caused by plumbing leaks

Plaintiffs' argument for recovery under the Policy attacks its terms from two angles. To start, though, a quick factual recap. The Plaintiffs suffered a "breakage" in the sanitary waste system in their home. Doc. 39, Pls.' Br. Supp. Pls.' Resp. Opp'n Defs.' Mot. Summ. J. ¶ 23 [hereinafter Pls.' Resp. Br.]. The breakage caused several plumbing leaks that led to soil erosion, which ultimately caused the foundation to shift. *Id.* And the foundation shift brought about all of the damage to Plaintiffs' home—"cracks, separation of the trim and fascia, damages to the lighting and irrigation systems, damages the deck, and damages to the doors which became inoperable inside the home due to the shifting of ground." *Id.* Upon inquiry, Defendants told Plaintiffs their damages were not covered under the Policy. Plaintiffs sued.

First, Plaintiffs contend that the Policy covers those damages because the WDE specifically covers "deterioration, wet rot or dry rot of property . . . caused by continuous or repeated seepage or leakage of water or steam from a . . . plumbing system." *Id.* ¶ 24. The Policy does not define "deterioration." Thus, Plaintiffs continue, the Court must give it its plain meaning: the process of becoming progressively worse. *Id.* ¶ 28 (citing *Deterioration*, Oxford Dictionary of English 357 (3d ed. 2010)). Plaintiffs allege that the damages to their home, as described above, became "progressively worse" and thus qualify as deterioration covered under the Policy by virtue of the WDE. *Id.* Alternatively, Plaintiffs say, if the damages to their home did not fall within the WDE's language, then the policy is ambiguous and should be interpreted in their favor. *Id.* ¶¶ 25, 30.

Second, Plaintiffs argue that the WDE expands the Policy's "Losses Not Insured Section" to the extent that it excludes coverage for foundation "settling, cracking, shrinking, bulging or

expansion" and "earth movement." *Id.* ¶ 31. Endorsements, Plaintiffs explain, control over conflicting terms in the main policy. *Id.* ¶ 32. The WDE provides coverage for deterioration caused by plumbing leaks. Therefore, Plaintiffs conclude, it establishes an exception to other exclusions in the Policy, including those for losses caused by foundation or earth movement. *Id.* ¶ 33. And for that reason, Plaintiffs contend, the Policy covers all of the damage to their home. *Id.*

Defendants' argument to the contrary is straightforward. Insureds are not entitled to recover for damages under a policy unless those damages are covered by the policy. Doc. 42, Defs.' Reply ¶ 2. The WDE covers "deterioration, wet rot or dry rot" caused by plumbing leaks that occurs over a period of time but specifically precludes other forms of water damage. *Id.* What's more, Defendants posit, the WDE expressly provides that any damage caused by "settling, cracking, shrinking, bulging, or expansion of pavements, patios or foundations" is not covered. *Id.* Those terms are unambiguous and comport with the Policy's general preclusion of damages for earth movement, regardless of whether that movement was caused by water. *Id.* Plaintiffs' damages fall within the foundation and earth movement exclusions. *Id.* Accordingly, Defendants conclude, the Policy does not cover their claims. *Id.*

The Court agrees with Defendants. After reading the policy and the WDE in context, the Policy's terms and the extent of its coverage are clear. To best convey that clarity, however, the Court finds it necessary to address the parties' arguments out of order—that is, by first addressing the extent of the WDE's impact on the Policy and then turning to the ambiguity issue.

The unendorsed Policy does not cover damage caused by: (1) plumbing leaks; (2) foundation shifting; or (3) earth movement. Doc. 35 Defs.' App. 36–40, Ex. A, Policy No. 43-QQ-0431-8. The WDE then amends that coverage in two key ways. First, it extends coverage to "deterioration, wet

rot or dry rot" caused by, among other things, plumbing leaks, except when that damage is to the leaky system itself. *See id.* at 9–10, Ex. A, Policy No. 43-QQ-0431-8. So for example, if a shower leak caused mildew on the walls, the wall would be covered but the pipe itself would not. Second, the WDE revises the Policy's "Losses Not Insured" section to say that, except as *specifically provided by the WDE*, damages caused by leakage or seepage from a plumbing system are still uninsured. *Id.* It then goes on to clarify: "Except as stated in this endorsement, [SFL] do[es] not provide coverage for any loss described in SECTION I - LOSSES NOT INSURED. All other policy provisions apply." *Id.* at 10.

Overall, the WDE's impact on the Policy's coverage is rather limited. It just adds coverage for wet rot, dry rot, and deterioration caused by plumbing leaks.[5] What it does not do—and what is clear from its terms—is cover damage to the leaky system itself or extend coverage to include damage caused by excluded perils such as foundation movement or earth shifting. And those are the exact damages for which Plaintiffs seek to recover—indeed, they characterize their own bottom line for damages as "Total Expenses for Foundation Repair." *Id.* at 83–85, Ex. F., Pls.' Expense Summ. So Plaintiffs are misguided to the extent that they maintain that the WDE controls the Policy's exclusions for foundation shifting or earth movement. Simply put, the Policy as amended by the WDE covers wet rot, dry rot, and deterioration caused by plumbing leaks[6] but does not cover any other water damage. *See id.* at 9–10, 36–40, Ex. A, Policy No. 43-QQ-0431-8. Nor does it cover

---

[5]More specifically, "continuous and repeated seepage or leakage of water or steam from a: (1) heating, air conditioning, or automatic fire protective system; (2) household appliance; or (3) plumbing system, including from, within or around any shower stall, shower bath, tub installation, or other plumbing fixture, including their walls, ceilings, or floors[.]" *Id.* at 9–10, Ex. A, Policy No. 43-QQ-0431-8.

[6]*See supra* note 5.

foundation shifting or earth movement—regardless of whether they are caused by covered or uncovered water damage. *Id.*

As to Plaintiffs' argument that the term "deterioration" is ambiguous in the WDE, the Court is unpersuaded. Plaintiffs are correct that the term should be given its plain meaning because the Policy did not define it. *See Farmers Ins. Exch. v. Greene*, 376 S.W.3d 278, 281 (Tex. App.—Dallas 2012), *aff'd*, 446 S.W.3d 761 (Tex. 2014). Yet the Court considers that plain meaning in context with the Policy as a whole so to harmonize all of its provisions. *Id.* And so, adopting Plaintiffs' proposed definition, the Court reads deterioration as the leakage or seepage of water or steam that becomes progressively worse but not to the point of soil erosion or foundation movement because the Policy expressly excludes coverage for losses caused by those perils. *Id.*; Doc. 35, Defs.' App. 9–10, 36–40, Ex. A, Policy No. 43-QQ-0431-8.

To be sure, there may be some margin calls as to what qualifies as deterioration—for example, a wall collapsing after a leak or a bathtub falling through a floor. But foundation movement caused by soil erosion due to plumbing leaks years in the making is not one. Deterioration is unambiguous in this context and does not include the damages to Plaintiffs' home.

While a number of courts have addressed water damage endorsements and foundation or soil movement, almost all are inapposite to the provisions in question here. *See, e.g.*, *Allison v. Allstate Indem. Co.*, No. 07-cv-4618, 2008 WL 2631557, at *2–3 (E.D. Pa. June 27, 2008) (holding WDE that limited coverage to leaks in plumbing system did not cover damage caused by down spouts or gutters when the policy specifically excluded losses for rainwater overflow in sewers and drains); *Dream Spa, Inc. v. Fireman's Fund Ins.*, No. 06-cv-13142 (KMK), 2008 WL 355458, at *6 (S.D.N.Y. Feb. 6, 2008) (holding that WDE applied to otherwise excluded losses because it expressly deleted

those losses from the exclusions list). That includes the case that Plaintiffs rely on in formulating their argument. *See Burditt v. W. Am. Ins. Co.*, 86 F.3d 475, 476–78 (5th Cir. 1996).

In *Burditt*, the Fifth Circuit considered similar facts but dissimilar policy terms. Plaintiffs in that case sought to recover under their homeowner's policy for "foundation damage allegedly caused by a leaking pipe." *Id.* at 476. The policy excluded losses caused by deterioration, wet rot or dry rot, and foundation movement. *Id.* Yet it also provided an express exception that those exclusions would not apply to losses caused by water damage. *Id.* In effect, the policy provided coverage for certain types of damage even if they were excluded by the policy. The Fifth Circuit found that those two clauses together rendered the provision ambiguous and therefore reversed the district court's summary judgment award to the insurer. *Id.* at 476–78.

That is not the case here. There is no blanket exception to provide coverage for otherwise excluded types of damage. *See* Doc. 35, Defs.' App. 9–10, 36–40, Ex. A, Policy No. 43-QQ-0431-8. The "Losses Not Insured" section explicitly states that losses caused by an uninsured peril are not covered, regardless of whether a covered loss played a role in their occurrence. The damage to Plaintiffs' home was, by their own admission, to the plumbing itself or caused by soil erosion and foundation movement. Each of those are uninsured losses under the Policy. So the Policy does not provide coverage.

The Court's conclusion is not unfounded. Two other courts have considered this precise issue—same type of loss, same insurer, same baseline policy, same WDE. *See Salazar*, 2014 WL 2862760; *Gulley v. State Farm Lloyds*, No. 2008-ci-03371, 2011 WL 11551050 (73d Dist. Ct. Bexar County, Tex. Aug. 17, 2011). The first was a state district court that sided with Plaintiffs' position in a general order that provided no analysis explaining its underlying rationale. *See Gulley*, 2011 WL

- 15 -

11551050. The Court respectfully disagrees with its conclusion. The second was the Southern

District of Texas, and its analysis cuts right to the heart of the issue:

> The WDE does not provide the broad coverage the [plaintiffs] seek for collateral damage due to foundation movement caused by plumbing leaks. The WDE excludes coverage for loss caused by foundation movement. That type of loss is present here. The WDE covers loss from deterioration, wet rot, or dry rot caused by continuous or repeated water leaks from sources that include a plumbing system. That type of loss is not present here.

*Salazar*, 2014 WL 2862760, at *3–4. Therefore, the court concluded, WDE did not apply by its own

terms. *Id.*

This Court—in line with Texas's preference towards uniformity—agrees. *See McGinnes*, 477

S.W.3d at 794.[7] The Policy as amended by the WDE does not cover damages caused by foundation

movement or soil erosion, even when plumbing leaks contribute to that movement. Plaintiffs'

conflicting interpretation of the WDE and expectations of coverage under the Policy are insufficient

to create an ambiguity. *See Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 134 (Tex. 1994). The

Policy's "language is clear and unambiguous and must be applied as written." *Salazar*, 2014 WL

2862760, at *4. As a result, the Court concludes that there is no genuine issue for trial and

determines that Defendants are entitled to summary judgment as to Plaintiffs' breach of contract

claim.[8]

---

[7]Uniformity is a tough goal as the third court to decide an issue that the first two came out differently on. Yet given the state court's lack of analysis, the Court finds this conclusion—which it would have reached independently anyways—attains as much uniformity "as possible." *See id.* at 794.

[8]The Court notes that Defendants advanced an alternative argument based on the doctrine of concurrent causation. *See* Doc. 42, Defs.' Reply ¶¶ 15–23. The Court will not address it here because Defendants prevailed on their first argument.

B.      *The Extracontractual Claims*

Plaintiffs' breach of contract claim was the lynchpin in their theory of recovery. In addition to that claim, though, Plaintiffs asserted a litany of extracontractual claims. The Court considers each in turn.

1.      Texas Insurance Code

The Court first addresses Plaintiffs' claims against Defendants for violations of chapters 541 and 542 of the Texas Insurance Code. *See* Doc. 1-3, Ex. C, Pls.' Orig. Pet. ¶¶ 33–40, 49–60. Defendants argue that they are entitled to summary judgment on all of those claims because the Policy did not cover the damage to Plaintiffs' home and Plaintiffs failed to allege any injury independent of the denial of coverage. Doc. 34, Defs.' Br. Supp. Mot. Summ. J. ¶¶ 17–18. Plaintiffs say they did suffer injury independent of the denial, and contend that their extracontractual claims should survive because, even if Defendants did not breach the Policy, the damage to their home was still covered under the Policy. Doc. 39, Pls.' Resp. Br. 39–41.

i.      *Chapter 541*

To recover under Chapter 541 of the Texas Insurance Code, a party must establish that: (1) "the insurer committed one or more of the acts prohibited by Chapter 541"; and (2) those "acts resulted in actual damages to the insured independent of the underlying claim." *Hulcher Servs., Inc. v. Great Am. Ins. Co.*, No. 4:14-cv-231, 2015 WL 3921903, at *11 (E.D. Tex. June 25, 2015) (citing *Parkans Int'l LLC v. Zurich Ins. Co.*, 299 F.3d 514, 519 (5th Cir. 2002) ("There can be no recovery for extracontractual damages for mishandling claims unless the complained of actions or omissions caused injury independent of those that would have resulted from a wrongful denial of policy benefits."))

- 17 -

Plaintiffs assert a slew a violations under Chapter 541. *See* Doc. 1-3, Ex. C, Pls.' Orig. Pet. ¶¶ 33–40, 49–60. Yet they fail to provide any proof of damages independent of the alleged wrongful denial of policy benefits. *Id.* The only real damages Plaintiffs allege are those associated with Defendants' alleged mishandling of their claim. *See id.* ¶¶ 64–71; Doc. 35, Defs.' App. 83–85, Ex. F., Pls.' Expense Summ.; Doc. 40, Pls.' App. 24–25, Ex. A, Dep. of John Thomas 95:14–97:13.

Indeed, the crux of Plaintiffs' independent injury claim—aside from the stress of preparing for litigation—is that they hung vinyl sheeting during the repair and moved furniture. Doc. 39, Pls.' Resp. Br. ¶ 41; Doc. 40, Pls.' App. 35–36, Ex. A, Dep. of John Thomas 137:1–141:7. That is not enough. *See, e.g.*, *Mt. Olive Missionary Baptist Church v. Underwriters at Lloyd's, London*, No. H-16-234, 2016 WL 4494439, at *5 (S.D. Tex. Aug. 26, 2016) (summarizing independent injury requirement). And so the Court concludes that Plaintiffs suffered no injury independent of the alleged wrongful denial of policy benefits. *See Hulcher Servs.*, 2015 WL 3921903, at *11.

As to Plaintiffs' argument that extracontractual claims remain viable even absent an insurer's breach of contract if the underlying loss was covered by the policy in question, the Court remains unmoved. Plaintiffs are right that some authority suggests that, "to the extent [a] policy affords coverage, extracontractual claims [may] remain viable" even absent independent injury. *State Farm Lloyds v. Page*, 315 S.W.3d 525, 532 (Tex. 2010); *see also In re Oil Spill by the Oil Rig DEEPWATER HORIZON in Gulf of Mexico, on April 20, 2010*, MDL No. 2179, 2014 WL 5524268, at *14–17 (E.D. La. Oct. 31, 2014) (noting apparent conflict in Fifth Circuit precedent over independent injury requirement when claims are covered by underlying policy). But as explained above, the Policy does not afford coverage here—"[a]nd when the issue of coverage is resolved in the insurer's favor, extracontractual claims do not survive." *Page*, 315 S.W.3d at 532. The Court therefore determines

- 18 -

that Defendants are entitled to summary judgment on Plaintiffs' claims under Chapter 541 of the Texas Insurance Code.

ii.      *Chapter 542*

To maintain a claim under Chapter 542 of the Texas Insurance Code, a party must show: (1) "a 'first-party' claim under an insurance policy"; (2) "the insurer's liability for that claim"; and (3) "the insurer's failure to follow one or more sections of the statute with respect to handling that claim." *Hulcher Servs.*, 2015 WL 3921903, at *11 (citing *GuideOne Lloyds Ins. Co. v. First Baptist Church of Bedford*, 268 S.W.3d 822, 830 (Tex. App.—Fort Worth 2008, no pet.)); *see also Weiser-Brown Op. Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 518 (5th Cir. 2015). In other words, liability for the claim is a precondition to liability under Chapter 542. *Wellisch v. Un. Servs. Auto. Ass'n*, 75 S.W.3d 53, 57 n.2 (Tex. App.—San Antonio 2002, pet. denied). Defendants were not liable for Plaintiffs' claim under the Policy so they cannot be held liable under Chapter 542. Thus, Defendants' are also entitled to summary judgment as to Plaintiffs' claims under Chapter 542 of the Texas Insurance Code.

2.      Good Faith and Fair Dealing

The Court next addresses Plaintiffs claim against SFL for breach of its common law duty of good faith and fair dealing. Doc. 1-3, Ex. C, Pls.' Orig. Pet. ¶¶ 61–62. SFL argues that it is entitled to summary judgment because the Policy did not cover Plaintiffs' claim and SFL did not act in bad faith when denying the claim. Doc. 34, Defs.' Br. Supp. Mot. Summ. J. ¶¶ 15–18. Plaintiffs respond that SFL's denial of their claim was in bad faith because either: (1) the policy covered it; or alternatively (2) SFL's actions in denying the claim were so extreme that they constituted bad faith under Texas law. Doc. 39, Pls.' Resp. Br. ¶¶ 37–41.

Under Texas law, "[a]n insurer has a duty to deal fairly and in good faith with its insured in the processing and payment of claims." *Repub. Ins. Co. v. Stoker*, 903 S.W.2d 338, 340 (Tex. 1995). The duty of good faith includes a duty to investigate. *Vought Aircraft Indus., Inc. v. Falvey Cargo Underwriting, Ltd.*, 729 F. Supp. 2d 814, 839 (N.D. Tex. 2010). That said, an insurer generally cannot be held liable for bad faith when it "'promptly denie[s] a claim that is in fact not covered.'" *JAW The Pointe, L.L.C. v. Lexington Ins. Co.*, 460 S.W.3d 597, 602 (Tex. 2015) (quoting *Stoker*, 903 S.W.2d at 341). But in some cases, an insurer's conduct in denying a claim that it was not obliged to pay may be so extreme that it constitutes bad faith. *Id.*; *Stoker*, 903 S.W.2d at 341.

The Court has already determined that the Policy did not cover Plaintiffs' claim. So SFL's argument turns on whether its conduct in denying the claim was extreme to the point of bad faith. Plaintiffs argue that it was. In particular, Plaintiffs allege that SFL's "complete failure to even investigate Plaintiffs' loss . . . constituted an extreme act." Doc. 39, Pls.' Resp. Br. ¶ 41. SFL, by contrast, contends that its limited investigation did not constitute an extreme act because there was a bona fide dispute about the Policy's coverage. Doc. 34, Defs.' Br. Supp. Mot. Summ. J. ¶ 16. The Court agrees with SFL.

For starters, the Court notes that "no Texas court has yet held that recovery is available for an insurer's extreme act." *Mid-Continent Cas. Co. v. Eland Energy, Inc.*, 709 F.3d 515, 522 (5th Cir. 2013). Put another way, neither the Court nor the Fifth Circuit has been able to locate a single successful bad faith denial claim for an uninsured loss. *See id.* 521–23. So Plaintiffs' argument is tenuous, at best.

If any act were to rise to that level, however, a wholesale failure to investigate would make a good candidate. *See Potomac Ins. Co. v. Woods*, No. 1:95-cv-469, 1996 WL 450687, at *6 (E.D.

Tex. July 22, 1996) (citing *Stoker*, 903 S.W.2d at 341). That appears to be the angle Plaintiffs are gunning for.

Yet there was no wholesale failure to investigate here. Indeed, SFL—through its adjuster Stronger—conducted a telephone interview in which it gathered information about the damage to Plaintiffs' home and determined that the Policy did not cover their claim. Doc. 40, Pls.' App. 50–53, Ex. C, Claim History File. In other words, SFL investigated Plaintiffs' claim and then made a coverage determination. That seems routine, not extreme. *See United Neurology, P.A. v. Hartford Lloyds Ins. Co.*, 101 F. Supp. 3d 584, 594 (S.D. Tex. 2015) ("A bona fide dispute about the insurer's liability on the insurance contract does not rise to the level of bad faith.").

More to the point, though, the Court determines SFL's conduct is nowhere near the high-water mark needed to constitute the first bad faith denial claim for an uninsured loss under *Stoker*. *See Mid-Continent Cas.*, 709 F.3d at 521–23. For that reason, the Court concludes SFL warrants summary judgment as to Plaintiffs' claims for breach of the common law duty of good faith and fair dealing.

### 3.    Fraud and conspiracy to commit fraud

Finally, the Court addresses Plaintiffs' claims for fraud and conspiracy to commit fraud against both Defendants. Doc. 1-3, Ex. C, Pls.' Orig. Pet. ¶¶ 41–45. Defendants argue that they are entitled to summary judgment as to the fraud claim because they did not misrepresent anything to Plaintiffs and, even if they did, Plaintiffs suffered no injury as a result. Doc. 34, Defs.' Br. Supp. Mot. Summ. J. ¶¶ 19–21. As to the conspiracy claim, Defendants claim they ought to succeed because it is derivative of Plaintiffs' fraud claim, which lacks merit, and asserts a conspiracy between a corporation and its agent, which is impossible because a corporation cannot conspire with itself. *Id.* ¶ 22.

Plaintiffs, on the other hand, say each claim should survive because Defendants misrepresented the Policy and its coverage to Plaintiffs and failed to investigate their claims. Doc. 39, Pls.' Resp. Br. ¶¶ 42–44. What's more, they conspired together to do so. *Id.*

The Court, once more, agrees with Defendants. To prevail on their fraud claim, Plaintiffs must have shown that: (1) Defendants made a material representation that was false; (2) they knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth; (3) they intended to induce Plaintiffs to act upon the representation; and (4) Plaintiffs actually and justifiably relied on the misrepresentation and suffered injury. *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.2d 573, 577 (Tex. 2001). They failed to clear the first hurdle.

The gist of Plaintiffs' argument is that Defendants misrepresented the Policy to them by explaining that it did not cover their claim. *See* Doc. 39, Pls.' Resp. Br. 42–44. As should be clear by now, though, that is not the case: The Policy as amended by the WDE did not cover the damage to Plaintiffs' home. So Defendants did not make a misrepresentation, material or otherwise, to Plaintiffs about the Policy and its coverage.

The Court notes that Defendants failed to mention the WDE in their denial letter to Plaintiffs. *See id.*; Doc. 40, Pls.' App. 50–53, Ex. C, Claim History File. They should have included it. At the same time, however, that omission did nothing to change the end result—informing Plaintiffs that the Policy did not cover their claim. That was a patently true statement and therefore cannot form the basis of a fraud claim. *See Sonterra Cap. Ptrs., Ltd. v. Sonterra Prop. Owners Ass'n, Inc.*, 216 S.W.3d 417, 423 (Tex. App.—San Antonio 2006, pet. denied) (explaining that when a fraud claim rests on an alleged misrepresentation, a defendant need only demonstrate the statement is true to be entitled to summary judgment on the claim). Defendants are therefore entitled to

summary judgment on Plaintiffs fraud claims.

Turning to the conspiracy claim, the Court similarly sides with Defendants. Under Texas law, a claim for civil conspiracy requires the plaintiff to prove the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex. 1983). In Texas, as in most jurisdictions, civil conspiracy is not an independent cause of action. *See Arthur W. Tifford, PA v. Tandem Energy Corp.*, 562 F.3d 699, 709–10 (5th Cir. 2009) (citing *Miller v. Raytheon Aircraft, Co.*, 229 S.W.3d 358, 381 (Tex. App.—Houston [1st Dist.] 2007, no pet.)). Rather, it is a "derivative tort," and as such, "a defendant's liability for conspiracy depends on participation in some underlying tort for which plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996).

The Court has disposed of all of Plaintiffs's claims that could give rise to an underlying tort on which their claim for civil conspiracy could rest. Accordingly, Plaintiffs' claim for civil conspiracy falls flat. *See, e.g.*, *Mary E. Bivins Found. v. Highland Cap. Mgmt. L.P.*, 451 S.W.3d 104, 112 (Tex. App.—Dallas 2014, no pet.) ("Proof of a civil conspiracy depends upon proof of an underlying tort.").

To close, the Court notes that Plaintiffs also asserted a cause of action against SFL under Section 4001.051 of the Texas Insurance Code, which in effect imposes statutory vicarious liability on insurers for their agents' actions. *See Wallace v. AmTrust Ins. Co. of Kan.*, No. 10-14-00209-cv, 2016 WL 3136875, at *2 (Tex. App.—Waco June 2, 2016, no pet. h.). The Court could have addressed this claim like Defendants did and lumped it in with analysis of Plaintiffs' claims under chapters 541 and 542 of the Texas Insurance Code. *See* Doc. 34, Defs.' Br. Supp. Mot. Summ. J. ¶¶

17–18. Yet it is more appropriately dealt with here because it fails for the same reasons as the civil conspiracy claim: There is no underlying liability to be imposed vicariously. On that basis, Defendants are entitled to summary judgment on Plaintiffs' claims under Section 4001.051 of the Texas Insurance Code.

## IV.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Defendants' Motion for Summary Judgment in its entirety. And so the Court **DISMISSES WITH PREJUDICE** Plaintiffs' suit. Final Judgment will follow this Order.

**SO ORDERED.**

**SIGNED: November 2, 2016**.

JANE J. BOYLE
UNITED STATES DISTRICT JUDGE

- 24 -